**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-cv-23021-ALTMAN**

**OTHA KENYUA JOHNSON** *and*
**MATTHEW LEWIS**,

      *Plaintiffs*,

*v.*

**RICKY D. DIXON, SECRETARY OF**
**FLORIDA DEPARTMENT OF**
**CORRECTIONS**, *et al.*,

      *Defendants.*

_____/

**ORDER**

The Plaintiffs, Otha Kenyua Johnson and Matthew Lewis, are pretrial detainees who suffer from "opioid-use disorder" ("OUD"). Johnson Complaint [ECF No. 1] at 2; Lewis Complaint [ECF No. 6] at 2.[1] The Plaintiffs are receiving "medicated-assisted treatment" ("MAT") for their OUD at the Palm Beach County Jail and have been prescribed the drug "buprenorphine." *Id.* at 3. Both Plaintiffs anticipate that they will soon be placed in the custody of the Florida Department of Corrections ("FDOC")—specifically, at the "South Florida Reception Center"—which *doesn't* provide MAT or buprenorphine to its inmates. *See id.* at 5 ("The Florida Department of Corrections does not administer Suboxone [the brand name for buprenorphine], nor partake in any form of [MAT]."). In their complaints, the Plaintiffs assert two claims—one under Title II of the Americans with Disabilities Act of 1990 (the "ADA") and one under 42 U.S.C. § 1983—and ask us to require the Secretary of FDOC and the Warden of the South Florida Reception Center to let the Plaintiffs undergo MAT

---

[1] Johnson's and Lewis's complaints *aren't* identical, but they raise the same constitutional claims and are based on the same facts. *Compare* Johnson Complaint *with* Lewis Complaint. So, for the sake of judicial efficiency, we'll cite *only* to Johnson's Complaint since (at this stage of the proceedings) the minor differences between them won't affect our screening under 28 U.S.C. § 1915A.

while they're in FDOC custody. *See ibid.* ("I am seeking emergency injunctive relief against the Florida FDOC in response to its policy that denies the continuation of my MAT while in custody or upon admittance."). After careful screening, we'll **ALLOW** the Plaintiffs' complaints to proceed to service.

## THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* §1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (cleaned up).

## ANALYSIS

The Plaintiffs allege that, as a matter of policy, FDOC doesn't provide MAT to its inmates. *See* Johnson Complaint at 5. This policy, they contend, violates their rights under the Eighth Amendment and the ADA because—by refusing to continue the Plaintiffs' MAT—FDOC would "contradict the doctor's recommendations and place me at a high risk of relapse upon my release from

prison, [and] would also make me physically ill for several days while I undergo forced withdrawals." *Id.* at 7. The Plaintiffs request preliminary and permanent injunctive relief and ask us to require FDOC to give them MAT while they're incarcerated at FDOC facilities. *See id.* at 16.

To support their allegations, the Plaintiffs rely on a strikingly similar case from the District of Maine, *Smith v. Aroostook County*, 376 F. Supp. 3d 146 (D. Me. 2019) (Torresen, J.), *aff'd*, 922 F.3d 41 (1st Cir. 2019). In *Smith*, a soon-to-be-inmate of the Aroostook County Jail, who had been prescribed "a twice-daily dose of buprenorphine as part of a medication-assisted treatment ('MAT') program for her opioid use disorder," became aware that the jail would "refus[e] to allow her to continue taking her medication during her impending 40-day term of incarceration at the [jail.]" *Id.* at 149. Like the Plaintiffs here, Smith sued the Sheriff of Aroostook County in his official capacity and moved for a preliminary injunction, arguing that the jail's refusal to give her buprenorphine as part of her prescribed MAT would violate the Eighth Amendment and the ADA. *See ibid.* The district court made two findings that are relevant to our case, and we adopt both findings *for the limited purpose* of allowing the Plaintiffs to proceed to service under § 1915A.

*First*, the district court found that the case was ripe—even though the plaintiff had not yet been incarcerated at the jail—because (1) the jail indisputably had a "practice of denying individuals their proscribed MAT," (2) the plaintiff would soon be incarcerated at the jail, and (3) the plaintiff showed that she would suffer "an imminent, painful, and dangerous withdrawal" if her MAT were discontinued. *Id.* at 157. All of this, the district court explained, was enough to show that the possibility of harm wasn't based on "uncertain and contingent events that may not occur as anticipated or may not occur at all." *Id.* at 155 (quoting *McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003)).

We agree with the District of Maine on this first point. The Constitution "requires that there be a 'case' or 'controversy' before a federal court may decide a case." *Granite State Outdoor Advert. Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1116 (11th Cir. 2003) (citing U.S. CONST. art. III, § 2). Even if

a case satisfies "the textual constitutional constraints on the power of federal courts to decide cases," there are also "prudential considerations" a federal court must consider before exercising its jurisdiction—such as "whether it is appropriate for this case to be litigated in a federal court by these parties at this time." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005). A case will be suitably "ripe" for judicial review if "a plaintiff shows he has sustained, or is in immediate danger of sustaining, a direct injury as the result of [a government act]." *Ibid.* (alterations omitted) (quoting *Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir. 1991)).

Like the plaintiff in *Smith*, our Plaintiffs allege that (1) they're currently receiving MAT to treat their OUD; (2) they will soon be incarcerated at the South Florida Reception Center, an FDOC facility; (3) the FDOC has a blanket policy that prohibits inmates from receiving MAT; and (4) they will suffer the painful and dangerous consequences of withdrawal if they're suddenly denied MAT. *See* Johnson Complaint at 11 ("I will be transported to South Florida Reception Center soon after I am sentenced. When I arrive I will be subjected to . . . forced withdrawal and denial of buprenorphine treatment."). At this early, screening phase of the case, that's enough for the Plaintiffs to show that they're in imminent danger of being harmed by FDOC's policy. *See Pesce v. Coppinger*, 355 F. Supp. 3d 35, 44 (D. Mass. 2018) (finding the action ripe where "[t]here is no uncertainty with respect to the facts and issues relevant to resolving this dispute. Pesce has a prescription for methadone, his physician recommends continued treatment and Defendants will not provide Pesce access to this medication during his incarceration at Middleton").

*Second*, the *Smith* Court concluded that the plaintiff had brought a valid ADA claim because "Plaintiff is a qualified individual with a disability [OUD]" and because, by declining to continue the plaintiff's MAT, jail officials were *either* "refusing to make reasonable modifications to a policy or practice in order to allow her to access necessary treatment for her disability" *or* effectively "denying her the benefit of the jail's health care programs[.]" *Smith*, 376 F. Supp. 3d at 158–59. And (notably)

other courts around the country have come to the same conclusion. *See, e.g.*, *M.C. v. Jefferson Cnty., N.Y.*, 2022 WL 1541462, at *4 (N.D.N.Y. May 16, 2022) (Hurd, J.) ("The refusal to provide access to methadone deprives plaintiffs of 'meaningful access' to Jefferson Correctional's healthcare services."); *Rokita v. Pa. Dep't of Corr.*, 273 A.3d 1260, 1274 (Pa. Commw. Ct. 2022) ("Of significant note, very recently as of the time of this writing, the United States Department of Justice (DOJ) completed an investigation of several county court programs in Pennsylvania, and determined that banning MAT for individuals under court supervision or as a condition of participation in specialty drug treatment courts constitutes a violation of the ADA." (citing U.S. DEP'T OF JUSTICE, *The United States' Findings and Conclusions Based on Its Investigation of the Unified Judicial System of Pennsylvania under Title II of the Americans with Disabilities Act, DJ # 204-64-170* (Feb. 2, 2022), https://www.ada.gov/ujs_lof.pdf)).

Title II of the ADA "prohibits a 'public entity' from discriminating against 'a qualified individual with a disability' on account of the individual's disability[.]" *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1081 (11th Cir. 2007) (quoting 42 U.S.C. § 12132). To prevail on a Title II claim, "a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participating in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Id.* at 1083. The Supreme Court has held that "a disabled prisoner can state a Title II-ADA claim if he is denied participation in an activity provided in state prison by reason of his disability." *Id.* at 1081 (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998)).

Our Plaintiffs claim that their OUD constitutes a disability, and that FDOC will discriminate against them *because of* that disability by denying them the treatment they need. *See* Johnson Complaint at 15 ("The Defendants [sic] policy of denying my treatment qualifies as disparate treatment, [and] discrimination based on my disability."). That's enough to meet the requirements of Title II. OUD,

like other drug addictions, *can* qualify as a disability under the ADA. *See Jeffrey O. v. City of Boca Raton*, 511 F. Supp. 2d 1328, 1335 (S.D. Fla. 2007) (Middlebrooks, J.) (citing the Second, Third, Fourth, and Sixth Circuits for the proposition that "recovering alcoholics and drug addicts may meet the statutory definition" of disabled if "their addiction substantially limited their ability to live independently or with their families"). And the Plaintiffs affirmatively allege that the FDOC will deny them and "similar[ly] situated inmates" access to MAT *because of* this disability. Johnson Complaint at 15. We therefore conclude that (for the limited purpose of screening the Complaint under § 1915A) the Plaintiffs have stated a claim under Title II of the ADA.[2]

The *Smith* Court didn't address the plaintiff's Eighth Amendment claim because it found that "the Plaintiff's ADA claim [was] likely to succeed [on the merits.]" *Smith*, 376 F. Supp. 3d at 161. We, however, have an obligation under § 1915A to screen *all* of the Plaintiffs' claims. *See* § 1915A(b) ("On review, the court shall identify cognizable claims or dismiss the complaint *or any portion of the complaint*[.]" (emphasis added)). The Eighth Amendment prohibits prison officials from exercising "deliberate indifference to [the] serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To succeed on an Eighth Amendment claim, a prisoner must show: (1) "that she had a serious medical need"; (2) "that the prison official acted with deliberate indifference to her serious medical need"; and (3) "that [her] injury was caused by the defendant's wrongful conduct." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

The Plaintiffs have met all three of these elements (at least for now). *One*, OUD (and the withdrawals the Plaintiffs would face if their MAT were discontinued) *can* qualify as a serious medical need. *See Schiavone v. Luzerne Cnty.*, 2022 WL 3142615, at *3 n.3 (M.D. Pa. Aug. 5, 2022) ("Plaintiffs

---

[2] The Plaintiffs have sued both Defendants in their individual and official capacities. *See* Johnson Complaint at 1–2. But "there is no individual capacity liability under Title II of the ADA[.]" *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)). We'll therefore **DISMISS** the Plaintiffs' individual-capacity, ADA claims.

sufficiently allege that Decedent had a serious medical need. Plaintiffs allege that the Decedent suffered from a serious medical need in that she was experiencing withdrawals from her opioid use disorder." (citing *United States ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 576 (3d Cir. 1979))); *see also* Samuel Macomber, *The Right to Medication-Assisted Treatment in Jails and Prisons*, 51 UNIV. OF MEM. L. REV. 963, 997 (2021) ("For prisoners, failure to treat opioid use disorder is deliberate indifference to a serious medical need in violation of the Eighth Amendment.").

*Two*, FDOC's alleged blanket prohibition on the administration of MAT—which doesn't take into consideration the individual prisoner's needs—*might* constitute "deliberate indifference" to medical needs. *See Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266–67 (11th Cir. 2020) ("It seems to us that responding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate is the very definition of 'deliberate indifference'—anti-medicine, if you will."); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out.").

*Three*, the Plaintiffs have done enough to plead the element of causation by claiming that FDOC's no-MAT policy would cause the painful and severe side effects of a "forced withdrawal." Johnson Complaint at 15–16. In short, we find that the Plaintiffs have pled a facially sufficient deliberate-indifference claim under the Eighth Amendment.

\*     \*     \*

The Plaintiffs assert that they will suffer severe harm if their MAT is (as it soon will be) suddenly discontinued. The FDOC's policy of refusing to administer MAT (if true) could therefore violate the Plaintiffs' rights under the Eighth Amendment and Title II of the ADA. After screening the Complaint under the provisions of § 1915A, therefore, we hereby **ORDER AND ADJUDGE** as follows:

1.  Both Johnson's Complaint [ECF No. 1] and Lewis's Complaint [ECF No. 6] are **DISMISSED in part** insofar as they allege claims under Title II of the ADA against the Defendants in their *individual* capacities. The complaints shall **PROCEED** to service on all other claims.

2.  Both Johnson's IFP Motion [ECF No. 10] and Lewis's IFP Motion [ECF No. 11] are **GRANTED**. Both Plaintiffs shall owe the United States $350.00, which the Plaintiffs must pay to the Clerk of Court as funds become available. To effectuate those payments, the agency with custody over the Plaintiffs must forward these payments from the Plaintiffs' prisoner accounts to the Clerk of Court anytime each account's balance exceeds $10.00. That agency shall continue to make these payments until the Plaintiffs have paid their filing fees in full. The Clerk **SHALL** send a copy of this Order to the Palm Beach County Sheriff's Office and this Court's Financial Department.

3.  The Court will direct the U.S. Marshals Service to serve the appropriate Defendants in a separate order. *See* FED. R. CIV. P. 4(c)(3).

4.  Upon being served and receiving a copy of this Order, the Defendants **SHALL** file *both* an answer (or a Rule 12(b) pre-answer motion) *and* a response to the Plaintiffs' request for a preliminary injunction. *See All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1538 (11th Cir. 1989) ("[B]efore a preliminary injunction can issue . . . [FED. R. CIV. P. 65(a) requires] the defendant [to be] given a fair opportunity to oppose the application and to prepare for such opposition." (cleaned up)). Both the answer and the response to the Plaintiffs' request for a preliminary injunction will be due **21 days** after the Defendants are served. *See* FED. R. CIV. P. 12(a)(1)(A).

5.  This case shall remain **CLOSED**. Any party may move to reopen the case once **all Defendants** have been served.

**DONE AND ORDERED** in the Southern District of Florida on October 4, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Otha Kenyua Johnson, *pro se*
Matthew Lewis, *pro se*

Palm Beach County Sheriff's Office
ATTN: Inmate Trust Fund Department
3228 Gun Club Road
West Palm Beach, FL 33406

Financial Department,
United States District Court, Southern District of Florida

9