UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-23021-ALTMAN

**OTHA KENYUA JOHNSON**, *and*
**MATTHEW LEWIS**,

      *Plaintiffs*,

*v.*

**RICKY D. DIXON, SECRETARY OF
FLORIDA DEPARTMENT OF
CORRECTIONS**, *et al.*,

      *Defendants.*

_____/

## <u>ORDER</u>

Our Plaintiffs, Otha Kenyua Johnson and Matthew Lewis, are pretrial detainees who "are receiving 'medicated-assisted treatment' ('MAT') . . . at the Palm Beach County Jail[.]" Screening Order [ECF No. 13] at 1. Although neither Plaintiff is currently in the custody of the Florida Department of Corrections ("FDOC"), both have sued the Secretary of the FDOC and the warden of the South Florida Reception Center in their individual and official capacities, arguing that "they will soon be placed in the custody of the [FDOC]" and that, once there, the Defendants will forcibly end their MAT in violation of the Eighth Amendment and Title II of the Americans with Disabilities Act of 1990. *See ibid.*[1] We allowed the Plaintiffs' complaints to proceed to service because they "assert[ed]

---

[1] Both Plaintiffs originally sued Secretary Ricky D. Dixon and Warden Scott Cumbie in their individual and official capacities. *See* Johnson Complaint [ECF No. 1] at 1–2; Lewis Complaint [ECF No. 6] at 1–2. We've since learned, however, that Warden Cumbie retired, and that Jimmy Love is the new warden of the South Florida Reception Center. *See* Second Service Order [ECF No. 20] at 1–2. Since Warden Love is "the current warden of the South Florida Reception Center," we substituted him as a "proper party in this action" for the official-capacity actions against the warden of the South Florida Reception Center. *Id.* at 1 (citing FED. R. CIV. P. 25(d)). There are thus now three Defendants in this case: Secretary Dixon (in his individual and official capacities), Warden Cumbie (in his individual capacity), and Warden Love (in his official capacity).

that the [Plaintiffs] will suffer harm if their MAT is . . . suddenly discontinued" and that the "FDOC's policy of refusing to administer MAT (if true) could therefore violate the Plaintiffs' rights under the Eighth Amendment and Title II of the ADA." *Id.* at 7.

Secretary Dixon, through counsel, filed a Motion to Dismiss the Plaintiffs' Complaint under FED. R. CIV. P. 12(b)(1) and 12(b)(6). *See* Motion to Dismiss [ECF No. 27] at 1. Johnson filed a Response to the Motion to Dismiss, *see* Johnson's Response to Motion to Dismiss ("Response") [ECF No. 32], and Secretary Dixon replied to Johnson's Response, *see* Defendant's Reply in Support of Motion to Dismiss ("Reply") [ECF No. 34]. Lewis didn't respond to the Motion to Dismiss. *See generally* Docket.[2] After careful review, we agree with Secretary Dixon that the Plaintiffs lack standing and that their claims aren't ripe. We therefore **GRANT** Secretary Dixon's motion and **DISMISS** the case **without prejudice**.

THE LAW

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence." *United States v. Rojas*, 429 F.3d 1317, 1320 (11th Cir. 2005) (cleaned up); *see also Bors v. Preston*, 111 U.S. 252, 255 (1884) ("[T]he courts of the Union, being courts of limited jurisdiction, the presumption, in every stage of the cause, is that [they are] without their jurisdiction, unless the contrary appears from the record."). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

---

[2] Because Lewis never responded to the Motion to Dismiss, we **GRANT** the Motion to Dismiss **by default** *as to him* and **DISMISS** Lewis's Complaint. *See* S.D. FLA. L.R. 7.1(c)(1) ("[E]ach party opposing a motion shall file and serve an opposing memorandum of law no later than fourteen (14) days after service of the motion. Failure to do so may be deemed sufficient cause for granting the motion by default."). As we'll soon see, however, we would've granted the Motion to Dismiss on the merits as to Lewis—*even if* he'd opposed it.

2

In a facial attack, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (cleaned up). That means we look to the complaint "and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Ibid.* (cleaned up). In doing so, "the allegations in [the] complaint are [generally] taken as true for the purposes of the motion." *Stalley*, 524 F.3d at 1232–33 (cleaned up). At the same time, "[o]ur duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Flylux, LLC v. Aerovias de Mex., S.A. de C.V.*, 618 F. App'x 574, 577 (11th Cir. 2015) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007)). "Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Ibid.* (quoting *Griffin Indus.*, 496 F.3d at 1205–06).

When the defendant challenges the complaint under *both* Rules 12(b)(1) and 12(b)(6), we ask whether there's any overlap between the jurisdictional inquiry and the merits. "[W]here a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claims under Rule 12(b)(1) or Rule 12(b)(6). Or both." *Brownback v. King*, 141 S. Ct. 740, 749 n.8 (2021). But, where the "overlap between merits and jurisdiction may not exist," the district court "might lack subject matter jurisdiction for non-merits reasons, in which case it must dismiss the case under Rule 12(b)(1)." *Ibid.* The district court should "rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's cause of action." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (cleaned up).

A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) ("We also construe the complaint liberally because it was filed *pro se*."); *cf.* FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

Although we treat *pro se* litigants with some leniency, "this leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *Schwarz v. Ga. Composite Med. Bd.*, 2021 WL 4519893, at *2 (11th. Cir Oct. 4, 2021) (quoting *GJR Inv., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)). The requirement that "a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face . . . also applies to *pro se* complaints." *Wells v. Miller*, 652 F. App'x 874, 875 (11th Cir. 2016).

## ANALYSIS

Secretary Dixon's Motion to Dismiss relies on a simple premise: "[T]here has been no violation by Defendant in either his individual or official capacity—nor could there have been," the Secretary says, because "these two Plaintiffs . . . are not in FDOC custody at present nor will they be in the near future[.]" Motion to Dismiss at 3. From this baseline, Secretary Dixon advances five arguments. *First*, he contends that the Plaintiffs lack standing because they "have only hypothesized that if or when they are ever sentenced in state court that they will be denied MAT if or when they ever arrive at FDOC to enter state custody." *Id.* at 4. *Second*, he says that the Plaintiffs' claims aren't ripe because "their sentences have not been imposed, they are not ready to report to FDOC's custody, and they are not facing imminent painful withdrawal of MAT discontinuation." *Id.* at 9. *Third*, he asks for the protections of sovereign immunity because "[t]he Eleventh Amendment 'bars suits against state officials in federal court seeking retrospective or compensatory relief[.]'" *Id.* at 12 (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999)). *Fourth*, he claims that the Plaintiffs haven't exhausted their administrative remedies, as the Prison Litigation Reform Act ("PLRA") required them to do. *See id.* at 13. *Fifth*, he insists that the Plaintiffs have failed to state a claim because they haven't shown that he "had knowledge of either Plaintiffs' alleged disability or serious medical need[.]" *Id.* at 16. Because we find the Secretary's standing and ripeness contentions dispositive, we'll address only those first two arguments.

4

"Standing and ripeness present the threshold jurisdictional question of whether a court may consider the merits of a dispute." *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006). While there's significant "doctrinal overlap between standing and ripeness," the Eleventh Circuit has distinguished the two, explaining that "standing deals with which party can appropriately bring suit, while ripeness relates to the timing of the suit." *Id.* at 1205 (citing *Wilderness Soc'y v. Alcock*, 83 F.3d 386, 389–90 (11th Cir. 1996)). Since "Article III limits the power of the federal courts to 'cases' and 'controversies,'" a plaintiff must demonstrate that he or she has "suffered an 'injury in fact,' that the . . . injury is fairly traceable to the challenged action of the defendant, and that the injury would 'likely' be 'redressed by a favorable decision'" before a federal court can exercise jurisdiction. *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1379 (11th Cir. 2019) (first citing U.S. CONST. art. III, § 2; and then quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The ripeness doctrine, by contrast, presumes that "there is a sufficient injury to meet Article III's requirement of a case or controversy," but considers "whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision-making by the court." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (cleaned up). "Ripeness analysis involves the evaluation of two factors: the hardship that a plaintiff might suffer without court redress and the fitness of the case for judicial decision." *Elend*, 471 F.3d at 1211.

Citing the state-court criminal dockets of both Plaintiffs, Secretary Dixon contends that neither has standing—and, in the alternative, that neither's claims are ripe—because neither is "likely to enter the custody of FDOC" in the foreseeable future. Motion to Dismiss at 4; *see also* Johnson State Court Docket [ECF No. 27-1] at 1–14; Lewis State Court Docket [ECF No. 27-2] at 1–6.[3] As to

_____

[3] Because Secretary Dixon is advancing both a facial and a factual attack on the Complaint under Rule 12(b)(1), *see* Motion to Dismiss at 10, we can consider these attachments to his Motion to Dismiss, *see Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ("Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the

Johnson, the Secretary says that "he has not even been tried and, thus, cannot be in immediate danger of harm from [the Defendants] because he is not likely to enter the custody of FDOC until months from now, if ever." Motion to Dismiss at 4; *see also* Notice of Hearing [ECF No. 27-1] at 13 (indicating that calendar call for Johnson's trial has been set for February 8, 2024). And, while Lewis pled guilty *more than five years ago*, the Secretary says that he "also is not likely to enter the custody of FDOC in the immediate future because he has not yet been sentenced . . . and no date for his sentencing has been scheduled or will be until [Lewis's] co-defendant is extradited." Motion to Dismiss at 4; *see also* Renewed Motion for Bond [ECF No. 27-2] at 7–8 (explaining that "[Lewis] is listed as a witness for the co-defendant in this case," but that the State has "been unable to have the co-defendant extradited from Ireland"). Because (in sum) the Plaintiffs aren't "entering FDOC custody in the very near future," they cannot (the Secretary insists) challenge the legality of FDOC's policies. Motion to Dismiss at 5. We agree.

To have standing, the Plaintiffs "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Duty Free Am., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1271 (11th Cir. 2015) (quoting *Lujan*, 504 U.S. at 560). Where, as here, the Plaintiffs seek injunctive relief that "regulate[s] future conduct," they must show a "*real and immediate*—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (first emphasis added & cleaned up).

The Plaintiffs' feared injury (*i.e.*, the sudden discontinuation of MAT when they're transferred to FDOC custody) isn't "real and immediate." In *Lujan*, the Supreme Court rejected the notion that "'some day' intentions—without any description of concrete plans, or indeed even any specification

---

trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").

of *when* the some day will be," is sufficiently "imminent" or "immediate" to establish standing. 504 U.S. at 564. The Eleventh Circuit, following *Lujan*, has said that "immediacy requires only that the anticipated injury occur within some fixed period of time in the future. . . . Immediacy, in this context, means *reasonably fixed and specific in time and not too far off.*" *Houston*, 733 F.3d at 1339 (emphasis added) (quoting *ACLU of Fla., Inc v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1193–94 (11th Cir. 2009)); *see also Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1233 (11th Cir. 2019) ("Immediacy requires that the anticipated injury occur within some fixed point of time in the future. When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury." (cleaned up)). "Whether a plaintiff faces a real and immediate threat of future injury must be examined under the 'totality of all relevant facts.'" *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1233 (11th Cir. 2021).

Neither Plaintiff has identified a "fixed period of time in the future" when his injury might occur, because there's no way to know when—*if ever*—the Plaintiffs will enter FDOC custody. Johnson's case is easy. He hasn't even been found guilty of *any* offense, and his trial isn't set to begin—at the earliest—until February 2024. *See* Notice of Hearing [ECF No. 27-1] at 13. Between now and then, Johnson's case might be dismissed, or he may be acquitted, the jury might find him guilty of a lesser-included offense that doesn't allow for prison time, or the judge might decide to sentence him to a non-custodial term. In any of these (very possible) scenarios, Johnson would never spend a day in FDOC custody. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." (cleaned up)).

Lewis is in a similar boat. Although he pled guilty way back on December 3, 2018, he *still* hasn't been sentenced (and remains in the custody of the Palm Beach County Jail) because the State intends to call him as a witness against his co-defendant—a person who "is currently in Ireland and

has avoided extradition since 2016." Renewed Motion for Bond [ECF No. 27-2] at 7. Like Johnson, then, there's no way for *anyone* to predict, with any reasonable certainty, when (or if) Lewis will be remanded to FDOC custody, and there's certainly no indication that any such transfer is *imminent. See Corbett*, 930 F.3d at 1233 ("When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury."). Because the Plaintiffs aren't facing a "real and immediate" threat of future injury, they do not have standing to sue.

The Plaintiffs' claims are also not yet ripe. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010). As we just explained, the Plaintiffs' transfer to FDOC custody rests on a series of "contingent future events": for Johnson, his conviction and sentence; for Lewis, the extradition of his codefendant from Ireland, his testimony at the codefendant's trial, and then (finally) his sentencing. Since these events "may not occur as anticipated, or indeed may not occur at all," *ibid.*, the Plaintiffs' claims aren't yet ripe.

It's true that we previously relied on *Smith v. Aroostook County*, 376 F. Supp. 3d 146 (D. Me. 2019), in finding that "the Plaintiffs [have] show[n] that they're in imminent danger of being harmed by FDOC's policy," Screening Order [ECF No. 13] at 4. But that was based on our assumption (mistaken as it turns out) that the Plaintiffs "will *soon* be incarcerated at the South Florida Reception Center, a FDOC facility[.]" *Ibid.* (emphasis added); *see also Smith*, 376 F. Supp. 3d at 153–54 (recounting that the plaintiff "was convicted and sentenced to spend 40 days in the Aroostook County Jail" and that the suit was filed "the day before she was to report to the Jail"). We now know—with the benefit of the Plaintiffs' state-court criminal dockets—that *neither* Plaintiff will be moved to FDOC custody at any identifiable point in the near future.

Johnson's sole counterargument fails to persuade. In his Response, Johnson clarifies that, even

though the state-court docket indicates that he's set for trial, "the State has offered a plea and the defense has made a counteroffer. A court date will be set very soon for another plea conference, as the defense and the State are very close to an agreement." Response at 9 ("The [state court] pushed the date back from October to February for this very purpose of negotiations. I am not going to trial, both plea offers involve me spending some time in FDOC. . . . My attorney is very aware of this pending injunction, and time was made for the purpose of making sure that I am provided this potentially life-saving medication.").

In saying so, Johnson mainly relies on a case with similar facts—*Pesce v. Coppinger*, 355 F. Supp. 3d 35 (D. Mass. 2018) (Casper, J.)—where the plaintiff, who was not yet serving a sentence in the custody of the Essex County House of Corrections, sought "injunctive relief requiring that [d]efendants provide Pesce with access to his physician-prescribed methadone treatment." *Id.* at 39. Pesce, like Johnson, hadn't been sentenced when he sued, and "there [was] some uncertainty concerning the imminence of his incarceration." *Id.* at 43. Despite this "uncertainty," the court was "satisfied that Pesce's impending incarceration renders this case ripe for judicial review" because, "[r]egardless of any continuances he may receive, Pesce will join Middleton's incarcerated population given the pending mandatory minimum sentence, and, on his first day there, he will be denied the methadone treatment he has received on a near-daily basis since late 2016." *Id.* at 43–44.

For two reasons, *Pesce* isn't all that relevant here. *First*, *Pesce* only discusses ripeness—not standing—so it doesn't allay our central concern, which is that Johnson isn't facing a "real and immediate" threat of future injury. *See generally id.* at 43–45. *Second*, the *Pesce* plaintiff *knew* when he was pleading guilty, *knew* when he would be sentenced, and (most important) *knew* that he'd be serving a mandatory minimum prison term. *See id.* at 43–44 ("On December 3, 2018, Pesce must appear in Lynn District Court for a probation violation hearing. . . . In addition, on January 14, 2019, Pesce must appear in Ipswich District Court for entry of a guilty plea and sentencing for driving with a revoked

or suspended license in July 2018. . . . Pesce faces a sixty-day sentence for violation of his probation which was previously imposed but suspended, and a sixty-day mandatory minimum for driving with a suspended license due to operating under the influence of alcohol or drugs." (cleaned up)). Unlike *Pesce*, however, Johnson hasn't yet agreed to plead guilty. By his own admission, his "case is currently in a 'plea negotiations' phase." Response at 9. At any moment, then, Johnson could pull out of these negotiations and proceed to trial. And, even if Johnson and the State *do* reach an agreement, there's no guarantee that the court will accept it. *See Scott v. State*, 909 So. 2d 364, 368 (Fla. 5th DCA 2005) ("[A] judge is not required to accept a plea negotiated by the parties." (citing FLA. R. CRIM. P. 3.171(d))). Most importantly, and contra *Pesce*, there's no indication that Johnson's plea would *require* him to serve a mandatory minimum prison term. In other words, even if Johnson were to plead guilty, we still wouldn't know whether Johnson will spend even one day in prison. *Pesce* thus cannot guide us here.[4]

      Finally, as Secretary Dixon has cogently summarized: "Plaintiffs fail to allege that FDOC's policy [of denying MAT] will continue at the time [the Plaintiffs] enter—if they ever do enter—into

---

[4] We also disagree with the *Pesce* Court's conclusion that a constitutional challenge to a prison's policy becomes ripe as soon as the plaintiff expresses his intent to plead guilty. *Cf. Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co., Ltd.*, 240 F.3d 956, 965 (11th Cir. 2001) ("While the decisions of their fellow judges are persuasive, they are not binding authority. As a result, a district court cannot be bound by a decision of one of its brother or sister judges."). Our precedents are clear that a claim isn't ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Rivera*, 613 F.3d at 1050 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). And, as we've explained, there are many such contingencies lining the long path between a defendant's agreeing to plead guilty and his ultimate entry into prison. *Cf. United States v. Carmichael*, 343 F.3d 756, 761–62 (5th Cir. 2003) (dismissing constitutional challenge to a statute's "provisions relating to collection of DNA samples during an offender's probationary or supervised release period" because "it is a matter of conjecture whether either Collins or Carmichael will be forced to submit to DNA sampling during supervised release"); *Melnick v. Lawrence*, 2022 WL 17096252, at *2 (D. Colo. Sept. 20, 2022) ("As a result of Plaintiff's custody status, he cannot currently reside with his wife, and it is unknown when that would even be a possibility. This is an issue that depends on the uncertain future event of Plaintiff's possible release on parole. Therefore, the challenged purported prohibition on Plaintiff living with his wife is not a 'direct and immediate' dilemma that the Court may resolve."), *report and recommendation adopted sub nom. Melnick v. Achen*, 2022 WL 17091987 (D. Colo. Nov. 18, 2022).

FDOC's custody. . . . It may be years before Plaintiffs enter FDOC custody, and FDOC may in the future change this alleged policy, or may already have done so, and, thus, Plaintiffs have failed to allege an ongoing violation or a real and immediate threat of future injury." Motion to Dismiss at 7 (cleaned up). In other words, Johnson and Lewis *may* one day be incarcerated at an FDOC facility. And, if they are, the FDOC *may* continue its current MAT. But therein lies the problem: "may" just isn't nearly good enough to establish standing (or ripeness) for a plaintiff who's asked for prospective relief. That's because, by definition, Johnson and Lewis may *never* enter FODC custody. And, even if they do, the FDOC may have *discontinued* or materially altered its MAT policy by then—or it might have agreed to exempt certain inmates, including Johnson and Lewis, from its prohibitions. *See Houston*, 733 F.3d at 1329 ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." (cleaned up)); *Elend*, 471 F.3d at 1211–12 ("When a case involving prospective relief provides a court with no factual assurance that future injury is likely and no clues about its contours should such an injury arise, we are left with only the faintest picture of a possible constitutional transgression occurring someday . . . . Such a claim is not fit for adjudication by this Court.").

Where, as here, there is no active "case or controversy" for us to adjudicate, we must dismiss the case *without prejudice* for lack of subject-matter jurisdiction under Article III. *See Stalley*, 524 F.3d at 1232 ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction . . . . [It] is not a judgment on the merits and is entered without prejudice." (cleaned up)).[5]

---

[5] Two final points. *One*, since we lack subject-matter jurisdiction to adjudicate this case, our decision here disposes of the *entire case*—not just the Plaintiffs' claims against Dixon—even though Warden Cumbie and Warden Love haven't appeared and didn't join Secretary Dixon's motion. *See Guevara v. Republic of Peru*, 468 F.3d 1289, 1305 (11th Cir. 2006) ("If the court finds that it does not have subject matter jurisdiction, 'the court's sole remaining act is to dismiss the case for lack of jurisdiction.'" (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000))). *Two*, by dismissing the

CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** that Secretary Dixon's Motion to Dismiss [ECF No. 27] is **GRANTED**. This case is **DISMISSED without prejudice** for lack of subject-matter jurisdiction under FED. R. CIV. P. 12(b)(1). All other pending motions are **DENIED as moot**. The Clerk shall **CLOSE** the case.

**DONE AND ORDERED** in the Southern District of Florida on December 14, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

       Otha Kenyua Johnson, *pro se*
       Matthew Lewis, *pro se*

---

case *without prejudice*, we leave open the possibility that the Plaintiffs *might* be able to re-file this lawsuit if (or when) their anticipated injuries become more definite and immediate.